UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J.H.R., a minor, by James Radford, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 1:07-cv-1584-DFH-DML |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff JHR seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for children's supplemental security income under the Social Security Act. Acting for the Commissioner, an Administrative Law Judge (ALJ) determined that JHR was not disabled under the Social Security Act because his impairments did not meet or medically or functionally equal a listed impairment. For the reasons discussed below, the court affirms the Commissioner's decision.

*Background*

JHR was born in 1992. His mother Pamela Griffin filed an application for supplemental security income on his behalf on May 4, 2004. R. 88. The ALJ determined that JHR had a protected filing date of March 5, 2004. R. 44. Griffin

claimed that JHR suffered from attention deficit hyperactivity disorder (ADHD). R. 121.  After the initial filing, JHR claimed that he also suffered from depression and asthma.  JHR's father now has custody of JHR.  The SSA denied JHR's application for benefits on August 18, 2004 and upon reconsideration on October 27, 2004.  R. 73, 77.  Administrative Law Judge Ann Rybolt denied JHR's claim on August 13, 2007.  R. 59.

I.     *Medical Evaluations*

At the request of the Indiana Disability Determination Bureau, clinical psychologist Dennis Mac Greene, Ph. D., performed a psychological evaluation on JHR in July 2004.  Dr. Greene reported that JHR was engaging and talkative.  R. 156.  He reported that JHR was in the

> Low Average to Borderline Range of intellectual functioning and that his achievement scores are several years below grade level.  He has a severe case of ADHD, combined type which is partially controlled by medication.  He has no other significant emotional or behavioral problems.  He has a mild case of Asthma, primarily in the summer which is controlled with an inhaler.

R. 158.  Dr. Joseph Croffie performed a pediatric examination in June 2004.  Dr. Croffie discussed JHR's history of asthma but concluded that JHR's "physical examination . . . is completely normal."  R. 168.

Two doctors working for the agency completed two Childhood Disability Evaluation Forms indicating that JHR was not disabled.  The first form was

completed by Dr. J. Gange and also signed by Dr. G. Wilson in October 2004. It concluded that JHR had an impairment or combination of impairments that was severe but did not meet, medically equal, or functionally equal any listed impairment needed to support supplemental security income for a child. R. 149. The form listed impairments as asthma, ADHD, and "BIF." *Id.* The form indicated that JHR had a less than marked limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitation in moving about and manipulating objects, caring for himself, and health and physical well-being. R. 151-52. Dr. S. Roush completed the same form in July 2004 with the same results. R. 160-65. Dr. J. Pressner also signed that form. R. 161. The same agency doctors completed two "Disability Determination and Transmittal" forms in August and October 2004 that also noted diagnoses of asthma and ADD/ADHD and concluded that JHR was not disabled. R. 71-72.

II.   *School and Medical Records*

The record contains numerous Indianapolis Public Schools documents concerning JHR. The court discusses the relevant documents that were produced after JHR's filing date, March 5, 2004. In April 2004, an IPS special education conference committee completed a report on JHR. The report stated that JHR could read at his grade level, that his comprehension needed support, and that he could keep up with the general curriculum. R. 177. The report stated that

JHR was "very anxious. When other students are not acting correct [JHR] will get very upset. He is a pleasant student to work with other than that." *Id.* It concluded that he was eligible for special education support and had an "other health impairment" and learning disability. R. 180.

In May 2005, JHR's teacher reported that he sometimes completed homework assignments on time and usually had appropriate behavior in class. R. 288. A committee performing a 2005 review of JHR's Individual Education Program (IEP) wrote that JHR had adequate academic performance but he "is often in conflict with other students and becomes loud and disruptive." R. 290. The committee concluded that JHR was eligible for special education support and could remain in regular classes. R. 293, 295. In March 2006, a committee wrote that JHR was failing language arts and math, but his performance in math was improving and his communication, social and emotional behavior, and self-help skills were age-appropriate. R. 309-10. The committee concluded that JHR could continue participating in regular classes and receiving special education support in language arts and math. R. 314. The committee added support for science and social studies in August 2006. R. 334. In December 2006, a committee did not report that JHR was failing any classes, but it reported that he was still behind grade level in reading, writing, and math. R. 337. It reported that his communication, social and emotional behavior, and self-help skills were age-appropriate. R. 337-38.

JHR attended Meridian Psychological Associates in 2005, 2006, and 2007. R. 229-72. Most of the Meridian records contain two diagnosis codes: 311 and 314.01. In the DSM-IV, 311 is a depressive disorder and 314.01 is ADHD. Other portions of the record are discussed below as needed.

III.   *Testimony at the Hearing*

The ALJ held a hearing on July 20, 2007. JHR's father, the father's girlfriend, and JHR's grandmother appeared at the hearing. Clinical psychologist Dr. James Brooks also attended. JHR's father testified that JHR attended regular classes at school but that he received special assistance. R. 418-19. He testified that JHR took Ritalin. R. 419. He testified that JHR was "hyperactive," particularly when his medication wore off. R. 443. He testified that JHR's school reported no behavioral problems when he was taking his ADHD medication and a few behavioral problems when he was not taking the medication. R. 424. The father testified that JHR discontinued seeing a therapist because his insurance changed, but he said that JHR had been acting like the rest of his children since he stopped seeing the therapist. R. 420-21. He testified that JHR played and fought with his younger step-siblings. R. 422. He also testified that JHR rarely played with other children in his neighborhood. R. 432. The father testified that JHR could usually complete his daily tasks. JHR helped take care of the family's dogs and cleaned his room. R. 430-31. JHR could pick out his clothes and dress

himself. R. 436. JHR often became frustrated when he could not complete tasks. R. 439.

The father's girlfriend, Ashley Crowe, testified at the hearing. Ms. Crowe testified that JHR took asthma and ADHD medication. R. 446. She testified that JHR attended inclusion classes at school, which have a regular teacher and a special education teacher. R. 449-50. She testified that JHR was reading at the fifth or sixth-grade level at the end of his eighth-grade year and that he failed the ISTEP exam. R. 452-53, 476. She testified that JHR would be attending a new Tech Academy, which accepted only one hundred students, for high school. R. 466. Ms. Crowe testified that JHR did not make friends easily and was teased often. R. 455. She testified that JHR wrote suicidal notes when he was attending counseling, but she testified that the notes stopped when he stopped attending counseling. R. 460. Ms. Crowe testified that JHR cleaned his room and took care of his hygiene only with her supervision. R. 468-69.

The ALJ held a supplemental hearing on August 2, 2007 with JHR present. JHR testified that he received mostly As, Bs, and Cs, with a D for a short time in language arts and social studies, during the eighth grade. R. 496-99. He testified that he did not pass the eighth grade ISTEP test. R. 529. JHR testified that he participated in soccer, track, and wrestling during the eighth grade. R. 504. He testified that he liked to go to the library with his friends. R. 509. He testified that other children used to tease him often. R. 530.

Dr. Brooks testified at the supplemental hearing after reviewing the record. Dr. Brooks testified that JHR had ADHD that was "reasonably well controlled by medication." R. 533, 538. He testified that JHR's intellectual level was above the borderline level. R. 534. He testified that any behavior problems that JHR had in school did not impede his learning. R. 535. Dr. Brooks testified that JHR was "reasonably sociable and developing some friendships." R. 538. He testified that JHR's mood "appears to be good. . . . I don't see a lot that supports a diagnosis of depression in those records." R. 535. He continued to discuss depression: "I don't see that as a disabling disorder here." R. 538. He concluded that JHR had a severe impairment of ADHD, a physical impairment of asthma, and a non-severe impairment of depression. R. 540. Dr. Brooks completed a form indicating that JHR had no limitation in moving about and manipulating objects and health and physical well-being and a less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self. R. 539, 544.

*Statutory Framework for Determining Disability*

To be eligible for supplemental security income under Title XVI of the Social Security Act, a child must establish that he suffers from a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The implementing regulations for the Act provide the three-step sequential evaluation of a disability claim. See 20 C.F.R. § 416.924(b)-(d). The steps are:

(1) Is the child engaged in substantial gainful activity? If so, he is not disabled.

(2) If not, does the child have a medically severe impairment or combination of impairments? If not, then he is not disabled.

(3) If so, does the child's impairment meet, medically equal, or functionally equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404? If so, the child is disabled.

When applying this test, the burden of proof rests on the claimant at each step. See *Oliver v. Barnhart*, 2006 WL 3207864, at *7 (S.D. Ind. Sept. 15, 2006) (Tinder, J.).

To determine whether an impairment is functionally equivalent to a listing, the ALJ must analyze its severity in six functional areas or "domains." 20 C.F.R. § 416.926a. These domains are: (a) acquiring and using information, (b) attending and completing tasks, (c) interacting and relating with others, (d)

moving about and manipulating objects, (e) caring for oneself, and (f) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To equal a listing, the claimant must show that he has an "extreme" limitation in one domain or "marked" limitations in two domains. 20 C.F.R. § 416.926a(a). A limitation is "extreme" if it interferes very seriously with the claimant's ability to initiate, sustain, or complete activities independently. 20 C.F.R. § 416.926a(e)(3)(I). A limitation is "marked" if it interferes seriously with the claimant's ability to initiate, sustain, or complete activities independently, or is a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(I).

The ALJ determined that JHR had a protected filing date of March 5, 2004, and she determined that he did not allege disability after January 1, 2007. Applying the three-step process to this closed time period, the ALJ found that JHR satisfied the first and second steps. The ALJ determined that JHR had not engaged in substantial gainful activity at any time relevant to the decision and that he had two severe impairments: ADHD and asthma. The ALJ also determined that JHR had a non-severe depression impairment.

At step three, the ALJ determined that JHR did not meet or equal any listed impairment. The ALJ evaluated ADHD under Listing 112.11 and asthma under Listing 103.03. The ALJ concluded that JHR's impairments did not functionally equal a listed impairment. She found a less than marked limitation in four domains and no limitation in two domains.

Because the ALJ found that JHR did not have an extreme limitation in any domain or a marked limitation in two or more domains, she concluded that he was not disabled for purposes of the Social Security Act. The Appeals Council denied JHR's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. R. 6; see *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). JHR appeals to this court, which has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### *Standard of Review*

If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court. 42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that factual conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Binion*, 108 F.3d at 782, or if the ALJ based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). The ALJ has a basic obligation to develop a full and fair record, *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997), and must build an accurate and logical bridge between the evidence and the result to permit meaningful judicial review of the administrative findings. *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Sarchet*, 78 F.3d at 307. If the evidence on which the ALJ relied does not support the conclusion, the decision cannot be upheld. *Blakes*, 331 F.3d at 569.

*Discussion*

I. *The ALJ's Discussion of Certain Listings*

A. *Listing 112.04*

JHR argues that the ALJ should have discussed Listing 112.04 for mood disorders because evidence in the record suggested that he suffered from depression. The Seventh Circuit has stated that "where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). However, the Seventh Circuit has refused to find that the ALJ must

-11-

expressly refer to every potentially relevant listing. *Id.* at 369-70. In this case, the ALJ did not err by failing to discuss Listing 112.04.

Listing 112.04 requires medically documented persistence of a major depressive syndrome, manic syndrome, or bipolar or cyclothymic syndrome. 20 C.F.R. Part 404, Subpart P, App. 1, § 112.04. The record lacks sufficient documented findings of depression to have required the ALJ to discuss 112.04. See *Rice*, 384 F.3d at 369 (ALJ did not err in failing to discuss a listing when the record contained insufficient evidence to establish that claimant met all requirements of the listing). One doctor wrote that JHR suffered from "ADHD combined R/O anxiety disorder, MDD." R. 377. "R/O" could mean many things, including "rule out." This was not a medically documented finding of anxiety. Additionally, the psychologist whom JHR visited in 2005 and 2006 listed a diagnosis of "311," which is a DSM-IV code for a depressive disorder. R. 229-67. Even if the ALJ was required to interpret a number – with no explanation and nothing more – as a diagnosis of depression, the diagnosis was not specific enough to support a finding of disability under 112.04. See 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."). Finally, evidence that JHR may have once considered suicide is not sufficient to support a finding that he met Listing 112.04 at the relevant time.

Although the ALJ did not discuss Listing 112.04, she discussed JHR's depression and determined that it was not severe.[1] The ALJ referred to Dr. Brooks' determination that the record did not support a diagnosis of depression. R. 47; see R. 540. The ALJ may consider the opinions of non-examining medical experts. 20 C.F.R. § 404.1527(f)(2)(iii). The ALJ did not ignore the possibility that JHR suffered from depression. She relied on medical testimony to determine that he did not have a severe impairment caused by depression, and the record did not suggest a contrary determination. The ALJ's failure to discuss Listing 112.04 was not reversible error.

B.  *Listing 112.11*

JHR argues that the ALJ's determination that he did not meet Listing 112.11 for ADHD was reversible error because she ignored or misconstrued many pieces of evidence. Listing 112.11 requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity. 20 C.F.R. Part 404, Subpart P, App. 1, § 112.11. It also requires at least two of the following requirements from Listing 112.02(B)(2): marked impairment in age-appropriate cognitive/communicative function, documented by medical findings; marked impairment in age-appropriate social functioning, documented by history and

---

[1] When discussing severity, the ALJ stated that JHR "has not been diagnosed with clinical depression." R. 47. JHR argues that this statement was incorrect because of the psychologist's records listing "311." Even if the ALJ's statement was incorrect, it was not reversible error because the record does not contain evidence sufficient to establish that JHR met Listing 112.04.

medical findings; marked impairment in age-appropriate personal functioning, documented by history and medical findings; and marked difficulty managing concentration, persistence, or pace.  The ALJ's determination that JHR did not meet Listing 112.11 was not reversible error.

The ALJ based her Listing 112.11 conclusion on Dr. Brooks' and state doctors' opinions that JHR did not meet or medically equal any listing. R. 48.  The ALJ also stated that the record contained no other medical opinion of a listing-level impairment and no evidence that JHR's ADHD resulted in marked impairments in any of the Listing 112.02(B)(2) categories.  These statements were correct.

No medical findings in the record state that JHR met any listing.  The only medical opinions that discussed listings concluded that JHR met no listings. One of these opinions was based on the psychological evaluation that JHR claims the ALJ largely ignored.  R. 149-58.  Dr. Brooks' opinion was based on the whole record.  R. 533.  Under these circumstances, the ALJ was entitled to rely on the opinions of Dr. Brooks and the state doctors.  See *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (ALJ not required to articulate reasons for relying on consulting physician's determination on equivalence when claimant presented no evidence of equivalence).

Nine pages of JHR's brief detail evidence that he claims suggested that he met Listing 112.11.[2]  JHR argues that the ALJ ignored or misconstrued this evidence.  The ALJ is not required to list every piece of evidence offered and to discuss its relevance.  *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).  JHR's laundry listing of evidence is futile because none of the evidence establishes that he met any listing.  The evidence establishes that he had ADHD and that he received special education supports, but these points are not in dispute.  Dr. Brooks reviewed the record and determined that JHR did not meet a listing.  No other doctor has disagreed.  The ALJ did not err in concluding that JHR did not meet Listing 112.11.

---

[2]Much of the evidence that JHR cites was created before his filing date of March 5, 2004.  The ALJ wrote that "the period adjudicated by this decision begins March 5, 2004." R. 44.  JHR does not challenge this determination, so the court does not discuss evidence before this date.

The ALJ did write, incorrectly, that the first evidence that JHR suffered from ADHD was in 2003.  R. 46.  As JHR points out, IPS records and medical records indicate that JHR likely suffered from ADHD prior to 2003.  However, it was not reversible error for the ALJ to misstate the ADHD begin date when the begin date that she established, 2003, was before March 5, 2004.

II.     *The ALJ's Decision that JHR Did Not Functionally Equal a Listed Impairment*

JHR's final argument is that the ALJ ignored evidence that he functionally equaled a listing.  To functionally equal a listing, JHR must show that he had an "extreme" limitation in one domain or "marked" limitations in two domains.  The ALJ found that JHR had no limitation or a less than marked limitation in each domain.  The ALJ did not err in determining that JHR did not functionally equal a listing.[3]

The ALJ's conclusion was based on Dr. Brooks' opinion.  Dr. Brooks reviewed the record and concluded that JHR had no limitation in the moving about and manipulating objects domain and the health and physical well-being domain and a less than marked limitation in the other four domains.  The ALJ also noted the state doctors' conclusions that JHR had a less than marked limitation in three domains and no limitation in three domains.

JHR argues that the ALJ ignored evidence that would have supported a finding of a marked limitation in three domains.  First, JHR claims that the ALJ erred in determining that he had a less than marked limitation in acquiring and using information because she should have discussed evidence that he was

---

[3]JHR also argues that the ALJ erred when she found JHR's mother's testimony to be not credible. Pl. Br. 34.  JHR's mother did not testify at the hearing.  The ALJ did not consider her statements, which appear in the record second-hand, to be credible because they conflicted with other evidence and testimony. See R. 49-50 (explaining contradictions between mother's reports and witnesses' testimony).  Because the ALJ explained her conclusion, it was not error.

-16-

receiving special education and was still failing his classes. However, the ALJ described JHR's special education regiment accurately: he attended inclusion classes and could receive special assistance upon request. The ALJ also discussed JHR's most recent grades, stated that he failed the ISTEP test, and accepted that he was performing behind his grade level.

Second, JHR claims that the ALJ erred in determining that he had a less than marked limitation in attending and completing tasks because she should have discussed evidence that he needed to be prompted to complete homework. The record does contain evidence that JHR occasionally needed to be prompted to complete school work. *E.g.*, R. 451. However, Ms. Crowe testified that with prompting JHR successfully completed his homework and cleaned his room. R. 451, 468. The ALJ's discussion of JHR's limitations in this domain could have been more thorough, but the ALJ did not err because she relied on Dr. Brooks who reviewed the whole record and concluded that JHR did not have a marked limitation in this domain.

Third, JHR claims that the ALJ erred in determining that he had a less than marked limitation in interacting and relating with others because she ignored evidence that he had difficulty getting along with family members and other children. The ALJ did not ignore that JHR had difficulty making friends, writing that Ms. Crowe testified that he "has difficulty making and keeping friends." R. 54-55. The ALJ also discussed the father's and Ms. Crowe's testimony that JHR

-17-

got along with their other children. The ALJ did not discuss their testimony that JHR often fought with their other children, but this was not error in light of the evidence that JHR completed tasks with the other children and the ALJ's recognition that JHR had difficulty getting along with his peers. The ALJ discussed JHR's limitations in this domain, consulted medical opinions, and reached a conclusion consistent with the opinions. The ALJ did not err.

JHR argues that two recent Seventh Circuit cases require remand on the functional equivalency issue. *Giles v. Astrue* remanded because the ALJ's step-three determination was inadequate. 483 F.3d 483 (7th Cir. 2007). The ALJ in *Giles* "summarily concluded" that he did not have a marked limitation in five domains and "did not explain why [findings suggesting disability] were insufficient to find a marked limitation in attending and completing tasks." *Id.* at 487-88. Unlike the ALJ in *Giles*, the ALJ in this case did not summarily conclude that JHR was not disabled. Rather, she relied on doctors' opinions and laid out the evidence that suggested he was not disabled. Cf. *Giles*, 483 F.3d at 488 (remanding because it was "unclear what evidence the ALJ relied upon").

*Murphy v. Astrue* remanded because the ALJ failed to discuss evidence suggesting disability. 496 F.3d 630 (7th Cir. 2007). In that case, a doctor testified that the claimant had a marked limitation in one domain and no marked limitation in four domains. The doctor also testified that the claimant may have had a marked limitation in a second domain, but he needed more information to

-18-

reach that conclusion. After the hearing, the ALJ received the additional information and determined that the claimant was not disabled without consulting further with the doctor. The Seventh Circuit remanded because the "ALJ did not explain why he gave no weight to the portions of the school documents which support a finding" of disability. *Id.* at 634. The court continued: "The ALJ should have supplied [the testifying doctor] with the school records and allowed him to give a medical opinion" as to whether the claimant had a marked limitation in the domain that the doctor was previously unable to analyze. *Id.* at 635. This case is different because the ALJ relied on Dr. Brooks' conclusion that JHR had no marked limitations, and there is no indication that Dr. Brooks lacked critical information. Additionally, as discussed above, the ALJ did not ignore critical information; she laid out evidence supporting and opposing a finding of disability and reached a conclusion. The ALJ did not commit reversible error when she concluded that JHR's impairments did not functionally equal a listing.

*Conclusion*

The court affirms the Commissioner's denial of JHR's application for supplemental security income. Final judgment shall be entered accordingly.


So ordered.

Date: March 13, 2009

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

-20-

Copies to:

Patrick Mulvany
mulvany@onet.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov